**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2800-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

YANIT VALDEZ, a/k/a YINET
VALDEZ, YINET M. VALDEZ,
YINET MAIROBY VALDEZ,
YANIT M. VALDEZ, and YANIT
MAIROBY VALDEZ,

     Defendant-Appellant.

_____

Submitted June 4, 2025 – Decided July 28, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 21-04-0133.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Brian D. Driscoll, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Leandra Cilindrello, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the March 18, 2024 order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. Based on our careful review of the record and the application of well-established law, we conclude defendant failed to establish a prima facie claim for ineffective assistance of counsel and affirm.

On April 21, 2021, defendant was indicted for: two counts of second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1) and N.J.S.A. 2C:17-1(a)(2); four counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(8); and one count of fourth-degree risking widespread injury or damage, N.J.S.A. 2C:17-2(c).

On August 27, 2021, defendant appeared in court to enter a plea. The prosecutor stated:

> In exchange for . . . defendant's plea to [c]ount [o]ne of [the i]ndictment . . . second-degree aggravated arson, the State [wa]s going to recommend at sentencing six years New Jersey State Prison subject to [the] No Early Release Act [(NERA)[1]]. There will also be no contact with the victims in this case and also restitution.
>
> The restitution will be a little on the hefty side, Judge . . . in light of the fact that there [are] about sixty

---

[1] N.J.S.A. 2C:43-7.2.

A-2800-23

residents that were displaced as a result of this fire she set.

Defendant submitted a signed plea form. On the form, defendant indicated that no threats had "been made in order to cause [her] to plead guilty."

Further, defendant indicated she was not "a citizen of the United States." She understood: (1) the "guilty plea may result in [her] removal from the United States and/or stop [her] from being able to legally enter or re-enter the United States"; and (2) she had "the right to seek individualized advice from an attorney about the effect [the] guilty plea will have on [her] immigration status."

Further, defendant indicated she had not "discussed with an attorney the potential immigration consequences of [her] plea." Nonetheless, she "would [not] like the opportunity to do so" and "[h]aving been advised of the possible immigration consequences and of [her] right to seek individualized legal advice on [her] immigration consequences," she "still wish[ed] to plead guilty."

In addition, defendant indicated she was "satisfied with the advice [she] ha[d] received from [her] lawyer" and had no "questions concerning this plea."

The plea transcript reveals the following exchanges:

> THE COURT: All right. [Defense counsel], before I ask any further questions of your client, . . . your client is not a U.S. citizen, correct?

[DEFENSE COUNSEL]: Yes, Judge. That is correct, [y]our Honor.

THE COURT: Now, with regard to the immigration advisory, has she received the advice on immigration from an immigration attorney or someone that practices immigration and she's satisfied with the advice that she has received?

[DEFENSE COUNSEL]: Your Honor, I have satisfied my obligations . . . . My office has immigration counsel that I have been able to provide the ramifications of this plea in terms of the immigration likelihood here to [defendant] but also [defendant] can answer that for [y]our Honor as well.

THE COURT: [Defendant], it's my understanding that you are not a U.S. citizen, correct, ma'am?

DEFENDANT: Yes, correct.

THE COURT: You also understand because you are not a U.S. citizen, ma'am, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re[-]enter the U.S. You understand that, correct?

DEFENDANT: Yes, I understand.

THE COURT: Do you also understand, ma'am, that you have the right to seek individualized advice from an immigration attorney about the effect . . . your guilty plea . . . will have on your immigration status?

DEFENDANT: Yes, I understand.

THE COURT: And [defense counsel] had indicated that she has informed you with regard to the advice that

4

she received regarding your case from an immigration attorney. You understand that, correct, ma'am?

DEFENDANT: Yes.

THE COURT: [W]ould you like to have an opportunity even though you have already spoken with [defense counsel], you have completed this form, do you wish to consult with an immigration attorney?

DEFENDANT: Of course, yes.

THE COURT: Okay. All right. That does it for me. All right. . . . [Defense counsel], . . . please let us know when your client has spoken with an immigration attorney or when she indicates to your satisfaction and to the [c]ourt's satisfaction that she is satisfied even though she has not received -- what she has told me is not consistent with what's in the form. I'm not blaming anyone. Maybe she's changed her mind now.

[DEFENSE COUNSEL]: Judge, may I have a brief breakout room--

THE COURT: Sure.

. . . .

THE COURT: [Defense counsel], are you done?

[DEFENSE COUNSEL]: Yes, Judge, but if I may, I just wanted to explain to the [c]ourt, my client was misunderstanding the--

THE COURT: Hold on. Let's bring her in because I want the interpreter to be here as well.

[DEFENSE COUNSEL]: Sure.

5                                              A-2800-23

THE COURT: . . . [Defendant] is back. [Defense counsel] is back. I brought everyone from the breakout room. All right. . . . Go ahead, [defense counsel].

[DEFENSE COUNSEL]: Thank you, Judge. Judge, [defendant] and I have discussed this quite a bit over the last few weeks but I want -- I believe the question was misunderstood by [defendant] in that at some point she will be reaching out to -- when she answered claro to your earlier question, it was that at some point she is also going to have additional immigration advice because this case will result in her being put in immigration proceedings.

But my client does understand that today I did provide through immigration counsel with my office advice and that she could if she wanted to seek counsel before taking a plea today as to the immigration case but that at this time and knowing all that, she does not wish to do so and does wish to move forward as to the plea.

THE COURT: Okay. [Defendant], I'm going to tell you the following, ma'am. Did anyone force you to accept this plea today?

DEFENDANT: No.

THE COURT: [Defendant], with regard to the immigration consequences, maybe there was confusion as to my question, but I want to make sure, ma'am, I am not going to proceed with this case unless I'm convinced that this is what you want to do not even knowing the full consequences of what will happen with your immigration case. . . .

DEFENDANT: Yes, I'm sure that I want to proceed with the case.

6

THE COURT: Okay. Ma'am, are you under the influence of any drugs or alcohol that would impair your judgment today?

DEFENDANT: No.

THE COURT: Did anybody threaten you or make any promises to you other than what you heard in court?

DEFENDANT: No.

THE COURT: Are you satisfied with the services of your attorney, . . .?

DEFENDANT: Yes.

THE COURT: And as you heard the prosecutor mention that there are sixty or so victims and there is an application for restitution.

DEFENDANT: Yes.

THE COURT: What that means, ma'am is the restitution amount, we don't know what that's going to be. And I am concerned that you don't know what the restitution amount is and you still wish to proceed with the plea. You're sure you want to proceed without knowing the restitution amount, correct?

DEFENDANT: Yes, I'm sure.

THE COURT: And there will be an order entered at the time of sentencing [for] no victim contact. In this case, there are -- as the prosecutor said, there are a lot of victims . . . here. Maybe sixty, more than sixty victims. You understand all of that, correct?

DEFENDANT: Yes, I understand.

A-2800-23

THE COURT: And also, [defendant], you understand once I accept this plea, it will be very, very difficult for you to ask your attorney to withdraw the plea. You understand that, correct, ma'am?

DEFENDANT: Yes, I understand.

THE COURT: [Defendant], thus far, [the interpreter] has been providing you with the interpretation from Spanish to English, English to Spanish. So far, you are satisfied with his services, correct?

DEFENDANT: Yes.

THE COURT: And, [defendant], by accepting this plea, you understand you're giving up some very, very important and significant rights. Among those are the following: [t]he right to a trial, a jury trial where the State would have the burden and [the] State only has the burden to prove each and every element of each crime charged beyond a reasonable doubt.

DEFENDANT: Yes, I understand.

THE COURT: You also understand your attorney, . . . could have cross-examined witnesses, [and] ask[ed] other witnesses to appear. She could have filed applications or motions which may have resulted in a favorable ruling.

DEFENDANT: Yes, I understand.

THE COURT: You also understand that by accepting this plea you understand there will be a felony conviction in the second degree. You understand that, correct?

DEFENDANT: Yes, I understand.

8

THE COURT:  And, ma'am, the plea recommendation is six years New Jersey State Prison which is subject to [NERA], which means you must serve eighty-five percent of the sentence before you become eligible for parole.

DEFENDANT:  I understand.

THE COURT:  In addition, because of this NERA offense, which is a second-degree charge you're pleading guilty to, . . . I must impose at the time of sentencing a three-year term of parole supervision.

DEFENDANT:  Okay.

THE COURT:  And that term will begin, ma'am, as soon [as] you complete the sentence that I will be imposing which is the six-year sentence.  In addition, ma'am, if you violate the conditions of your parole supervision that your parole may be revoked and you may be subject to return to prison to serve all or any portion of the remaining period of parole supervision.

DEFENDANT: I understand.

THE COURT:  And even if you have completed serving the term of imprisonment previously imposed.  Do you have any questions, ma'am, of your lawyer, myself, or any other question that you have?  [Defendant], do you have any questions, ma'am?

DEFENDANT:  My attorney explained to me the whole proceeding.

THE COURT:  Right.  So you don't have any questions.

DEFENDANT:  No.

THE COURT: All right. [Defense counsel], factual basis?

[DEFENSE COUNSEL]: Thank you, Judge. . . . [Defendant], I'd like to direct you to August 3rd, 2020. On that date, you were in Paterson, New Jersey, correct?

DEFENDANT: Yes, correct.

[DEFENSE COUNSEL]: And specifically you were at 40 Cianci Street in Paterson, correct?

DEFENDANT: Yes, correct.

[DEFENSE COUNSEL]: And, on that date, at that location, you started a fire. Is that correct?

DEFENDANT: Yes, that is correct.

[DEFENSE COUNSEL]: And, in starting that fire, you know that a fire can cause someone to be seriously hurt. Is that correct?

DEFENDANT: Yes.

[DEFENSE COUNSEL]: And, in setting that fire, you knew that at that time, correct?

DEFENDANT: Yes.

[DEFENSE COUNSEL]: Is the State satisfied?

[PROSECUTOR]: If I could just ask a couple of questions. . . . [Defendant], you started that fire in the location of 40 Cianci Street, correct?

DEFENDANT: Yes.

10

[PROSECUTOR]: After reviewing all of the discovery with both of your attorneys, you've learned that that fire spread substantially, correct?

DEFENDANT: Yes, I learned about that.

[PROSECUTOR]: Specifically as to the location of 42 Cianci Street, 38 Cianci Street, 34 Cianci Street, and 35 Passaic Street all in the City of Paterson, correct?

DEFENDANT: Yes.

[PROSECUTOR]: And your actions that day by starting that fire, you know that you put people in danger, correct?

DEFENDANT: Yes.

On December 2, 2021, defendant appeared for sentencing. Counsel requested the court to consider "a sentence term that [wa]s less than what was negotiated with the State," although defendant was "prepared to be sentenced to a six-year . . . term." However, counsel argued "mitigation here significantly outweigh[ed] the aggravating factors and in the interest of justice, the [c]ourt should consider sentencing [defendant] to a . . . term of simply one day less than a five-year term."

Counsel argued for the lesser sentence because of the "ramifications that [defendant] will face in immigration court." Counsel explained that a sentence in excess of five years "automatically and statutorily bars [defendant] from

11

applying in immigration court for the mode of relief known as Withholding of Removal" and thereby "limit[ed] her defenses significantly in immigration proceedings, which will be inevitable."  Counsel noted defendant was "well aware of and ha[d] been counseled extensively on" the issues.

Counsel noted the court could "impose a greater period of ineligibility for parole, greater than the eighty-five percent pursuant to NERA" but the lesser sentence would allow defendant to "retain her ability to have the remedy of filing for Withholding of Removal in immigration court."

In addition, counsel explained that defendant:  had "acquired her lawful permanent residence status in 2014"; was the "primary caretaker" for two teenage children; and was working full-time before her arrest.

Counsel argued the following mitigating factors should apply:  two,[2] because, although defendant "acknowledge[d] that the damage caused was significant and that she should have recognized it in that moment, she did not at

---

[2]  N.J.S.A. 2C:44-1(b)(2), "defendant did not contemplate that the defendant's conduct would cause or threaten serious harm."

A-2800-23

that time"; six,[3] because defendant "agreed to restitution"; seven,[4] because defendant had "no criminal record"; eight,[5] because "there[ wa]s nothing here that is likely to reoccur"; nine,[6] because defendant is "deeply remorseful, and . . . has a strong character"; ten,[7] because defendant "sought out her sobriety" and has been "able to reflect on [her] decisions"; and eleven,[8] because defendant would face "excessive hardship."

Counsel also anticipated that the State would argue the presence of aggravating factor one[9] and contended defendant's "frame of mind at the time of

---

[3] N.J.S.A. 2C:44-1(b)(6), "defendant has compensated or will compensate the victim of the defendant's conduct for the damage or injury that the victim sustained, or will participate in a program of community service."

[4] N.J.S.A. 2C:44-1(b)(6), "defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense."

[5] N.J.S.A. 2C:44-1(b)(8), "defendant's conduct was the result of circumstances unlikely to recur."

[6] N.J.S.A. 2C:44-1(b)(9), "[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense."

[7] N.J.S.A. 2C:44-1(b)(10), "defendant is particularly likely to respond affirmatively to probationary treatment."

[8] N.J.S.A. 2C:44-1(b)(11), "[t]he imprisonment of . . . defendant would entail excessive hardship to . . . defendant or . . . defendant's dependents."

A-2800-23

this incident was not to wreak havoc." Counsel anticipated an argument as to factor two[10] and stated defendant would not "minimize" the incident and conceded the factor was "applicable here."

On her own behalf, defendant stated she was "very regretful about this and if [she] could turn back time, [she] would do it. [She] would just like to apologize and ask for forgiveness from all the victims. [She was] just asking for an opportunity for [her] children's sake."

The court heard testimony from a witness on behalf of defendant and various victims of the crime. Thereafter, the prosecutor explained the State considered defendant's children and the immigration consequences of a plea.

---

[9] N.J.S.A. 2C:44-1(a)(1), "[t]he nature and circumstances of the offense, and the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner."

[10] N.J.S.A. 2C:44-1(a)(2),

> [t]he gravity and seriousness of harm inflicted on the victim, including whether or not . . . defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.

A-2800-23

The prosecutor also described the injuries to first responders and the impact of the incident on the victims.

The prosecutor argued aggravating factors one, two, three,[11] and nine[12] were applicable. The prosecutor conceded mitigating factors six and seven were present. However, the prosecutor argued mitigating factor eight was not applicable because defendant "was drinking" before the incident. The prosecutor requested the court "take all of these factors into consideration" and "sentence in accordance with the plea agreement."

The court stated "[d]efendant fully understands and recognizes, and in fact, at the time of her plea . . . was aware of the immigration consequences flowing from such an acceptance, including her removal from the United States and her inability to enter the United States should she leave." Further, it noted this was "a heavily, . . . negotiated plea, and in fact, a very generous plea."

The court found aggravating factor: one was "clearly applicable" and gave it "medium weight"; two was applicable and gave it "medium weight"; three was applicable and gave it "low to medium weight"; and nine in terms of "both

___

[11] N.J.S.A. 2C:44-1(a)(3), "[t]he risk that the defendant will commit another offense."

[12] N.J.S.A. 2C:44-1(a)(9), "[t]he need for deterring the defendant and others from violating the law."

A-2800-23

general and specific deterrence [is] clearly applicable" and gave it "medium weight." The court did not find aggravating factor six.

In terms of mitigating factors, the court found factor: two carried "zero weight"; six was "applicable" and gave it "medium weight"; seven was applicable and gave it "low to medium weight"; eight was "marginally applicable" and gave it "very low weight"; nine was not applicable or "would have . . . very, very, very low weight"; and eleven was not applicable.

The court determined the "aggravating factors preponderate the mitigating factors." Further, that "the interest of justice will be served by accepting the plea recommendation and not deviating." The court sentenced defendant in accordance with the plea. After the court reviewed defendant's appeal rights with her, the following exchange occurred:

> THE COURT: All right. Finally, [defendant] your counsel . . . has represented you throughout these proceedings. Are you satisfied with her services?
>
> DEFENDANT: Yes.

In October 2022, defendant filed a pro se petition for PCR. Her petition was supported by a counselled letter brief. On February 21, 2024, the court heard the parties' arguments on the petition.

In a March 18, 2024 order and an accompanying nine-page written decision, the trial court denied defendant's petition for PCR without an evidentiary hearing. The court considered:

> Defendant['s] conten[tion]s that plea counsel was ineffective due to the following: (1) . . . counsel denied . . . defendant her right to consult with an immigration attorney prior to entering her guilty plea; (2) . . . counsel allowed . . . defendant to enter [into] a guilty plea to a second-degree [a]ggravated [a]rson when her conduct and allocution constituted third-degree arson[;] and (3) failed to argue for a sentence in the third-degree range prior to the sentence date.

As to defendant's argument regarding plea counsel's denial of her right to consult with immigration counsel, the court reviewed the transcript of defendant's plea. The court was "satisfied that . . . defendant . . . acknowledged understanding that because she [wa]s not a U.S. citizen, the guilty plea may result in her removal from the United States." Further, the court noted "defendant . . . wished to proceed with a guilty plea, despite not yet knowing the full consequences of her immigration status, and [she] stated she wished to proceed with the case." In addition, the court stated, "defendant acknowledged she was not forced, threatened, or coerced into taking the plea, and that she was not under the influence of any drugs or alcohol at the time of the plea." Moreover, "defendant acknowledged she was satisfied with counsel's

17

performance, that counsel had reviewed the case materials with her and had answered all her questions." Thus, the court found the "record ma[de] it clear defendant had time to consult with immigration counsel prior to the plea" and any assertion that "she felt pressured to plea [or] was confused about the process" was "clearly refute[d]" by the record.

Next, the court considered defendant's argument that "the factual basis given at the time of the plea did not establish all the elements of second-degree [a]ggravated [a]rson, but rather [wa]s 'suggestive' of a third-degree reckless disregard of the substantial and unjustifiable risk associated with [her] conduct in setting the couch on fire." In addition, the court considered defendant's argument "that the factual basis given d[id] not establish the element of purposely or knowingly placing another in danger of death or bodily injury."

The court considered the language of the statute. Under N.J.S.A. 2C:17-1(a)(1), "[a] person is guilty of aggravated arson, a crime of the second[-]degree, if he [or she] starts a fire or causes an explosion, whether on his [or her] own property or another's: [t]hereby purposely or knowingly placing another person in danger of death or bodily injury."

In rejecting defendant's argument, the court again reviewed the plea transcript where defendant admitted she: (1) started a fire; (2) knew "that a fire

18

can cause someone to be seriously hurt"; and (3) "put people in danger" "by starting the fire." The court was "satisfied that the record reflect[ed] a sufficient factual basis provided by . . . defendant that support[ed] the plea to second-degree [a]ggravated [a]rson."

Lastly, the court considered "defendant['s] assert[ion that defense] counsel failed to oppose the 'exaggerations' presented in the case, did not present mitigating factor two at sentence, and waited until the sentence day to argue for a sentence in the third-degree range."

The court found defendant's argument "failed" because "defendant acknowledged that she was satisfied with the attorney's performance and that her attorney answered all her questions." Further, the court noted that at sentencing, "counsel argued at length for a sentence less than what was agreed upon and presented all mitigating factors counsel deemed relevant at the time, including mitigating factor two."

The court found "there [wa]s nothing in the record to support defendant's claim that [defense] counsel was ineffective, and that counsel misadvised her regarding the immigration consequences of her plea and did not provide effective representation." Therefore, applying the Strickland[13] standard, the

---

[13] Strickland v. Washington, 466 U.S. 668 (1984).

A-2800-23

court found that "defendant failed to demonstrate the requisite facts required to overcome the strong presumption that her . . . attorney's conduct fell within a reasonable range of professional assistance." Because the court found "there [wa]s no basis for ineffective assistance of counsel," it also concluded "that an evidentiary hearing [wa]s not warranted."

On appeal, defendant raises the following arguments for our consideration:

> POINT I: THE COURT ERRED IN NOT FINDING COUNSEL INEFFECTIVE FOR PERMITTING DEFENDANT TO PLEAD WITHOUT CONSULTING AN IMMIGRATION ATTORNEY. N.J.S.A. 2C:17-1(a)(1).

> POINT II: DEFENDANT'S PLEA WAS NOT ENTERED VOLUNTARILY AND KNOWINGLY.

> POINT III: THE COURT ERRED IN FINDING THE FACTUAL BASIS TO AGGRAVATED ARSON. N.J.S.A. 2C:17-1(a)(1).

Defendant contends she "established a prima facie claim that requires an evidentiary hearing to hear testimony that will establish that defendant was denied effective assistance of counsel." She asserts the court erred by using the plea record to determine if her plea was "entered into voluntarily and knowingly" and that "her factual basis for the plea was not the result of improper

promises or threats." She claims "counsel improperly pressured [her] to proceed immediately to enter her plea."

In addition, defendant contends her plea was not "entered voluntarily and knowingly" because: (1) "[t]he plea forms were completed with a Spanish interpreter and all three persons virtually dated" the form nine days before the plea hearing; (2) "the restitution claim[] amounts had not yet been decided"; (3) "[d]uring the plea hearing defendant attempted twice to address the court" and "[t]his may have been an indication that she was confused with the plea process or" she wanted to refer to her video interview with the authorities; and (4) "counsel was obligated to provide her consultation from a [p]ublic [d]efender immigration lawyer."

Lastly, defendant argues "[t]he factual basis upon which [her] guilty plea rests was defective." Defendant contends "[n]o question asked her to explain why she set the fire and what she was thinking were the potential consequences." She asserts that her admissions during the plea hearing failed to "adequately establish[] that [she] in setting the couch on fire, purposely or knowingly destroyed the building or placed other people in danger of death or bodily injury." She contends "[c]ounsel was deficient during the plea hearing by making no mention of defendant's interview" with the authorities.

Defendant claims that "[b]ut for the repeated deficient performance of counsel in preventing [her] from testifying to her mental state and actual intent at the time of the couch fire, it is reasonably probable that the result of the proceeding would have been different." She contends "[t]he prejudice that resulted from the acceptance of the plea was not only the immigration consequences of the six-year sentence" but "[h]er plea to aggravated arson would have been inadequate."

We begin our discussion with a review of the principles governing our analysis. PCR "is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). "A petitioner must establish the right to [PCR] by a preponderance of the credible evidence." Preciose, 129 N.J. at 459 (citing State v. Mitchell, 126 N.J. 565, 579 (1992)).

Under Rule 3:22-2(a), "[a] petition for [PCR] is cognizable if based upon . . . [a s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." Under the Rule, we recognize that "[t]hose accused in criminal proceedings are guaranteed the right to counsel to assist in their defense." State v. Gideon, 244 N.J. 538, 549 (2021) (citing U.S. Const. amend.

VI; N.J. Const. art. I, ¶ 10). "[I]t is not enough '[t]hat a person who happens to be a lawyer is present at trial alongside the accused,' . . . rather, the right to counsel has been interpreted by the United States Supreme Court and [the New Jersey Supreme] Court as 'the right to the effective assistance of counsel.'" Id. at 550 (second alteration in original) (quoting Strickland, 466 U.S. at 685-86).

To establish a prima facie claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test established in Strickland. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second "far more difficult prong," a defendant must show that his or her defense was prejudiced. Gideon, 244 N.J. at 550 (quoting Preciose, 129 N.J. at 463). If defendant fails to "make[] both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

"The United States Supreme Court has applied the Strickland test to challenges of guilty pleas based on ineffective assistance of counsel." State v. DiFrisco, 137 N.J. 434, 456 (1994); see also Hill v. Lockhart, 474 U.S. 52, 58 (1958).

To set aside a guilty plea based on ineffective assistance of counsel, a defendant must show that (i) counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases," and (ii) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."

[DiFrisco, 137 N.J. at 457 (alteration in original) (first quoting Tollett v. Henderson, 411 U.S. 258, 266 (1973); and then quoting Hill, 474 U.S. at 59).]

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Ibid. (quoting Strickland, 466 U.S. at 689).

When a guilty plea is contested, counsel's performance is not deficient if "a defendant considering whether or not to plead guilty to an offense receives correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012) (citing State v. Nuñez-Valdéz, 200 N.J. 129, 138 (2009)).

A defendant can establish ineffective assistance of counsel if their attorney provided false or inaccurate advice that the plea would not result in deportation. See Nuñez-Valdéz, 200 N.J. at 139-42. The United States Supreme Court held a petitioner may meet the first Strickland prong by showing that their attorney made misrepresentations, either affirmatively or by omission, regarding

24

the potential immigration consequences flowing from a guilty plea. See Padilla v. Kentucky, 559 U.S. 356, 369-71 (2010). When deportation is a clear consequence of a guilty plea, the defendant's counsel has an affirmative duty to address the subject and give correct advice. See id. at 374. When the deportation consequences of a plea are uncertain, counsel need only advise their client that the plea may carry a risk of adverse immigration consequences. See id. at 369.

"Prejudice is not to be presumed." Gideon, 244 N.J. at 551 (quoting State v. Fritz, 105 N.J. 42, 52 (1987)). "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." State v. Aburoumi, 464 N.J. Super. 326, 339 (quoting State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014)). A defendant's mere "bald assertion that he [or she] would not have pled" guilty is insufficient. State v. Gaitan, 209 N.J. 339, 376 (2012).

"[T]rial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of" PCR. Preciose, 129 N.J. at 460. "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462-63. "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that

his or her claim, . . . will ultimately succeed on the merits.'"  State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)).  "Nevertheless, in order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel."  State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo."  Aburoumi, 464 N.J. Super. at 338.

Applying these well-established legal standards and having carefully reviewed the record on appeal, we are convinced defendant failed to establish a prima facie right to an evidentiary hearing or PCR.

Defendant failed to establish a prima facie claim of counsel's deficient performance.  We reject defendant's argument that her plea was not entered "voluntarily and knowingly."  Instead, on the plea form and during the plea hearing, defendant indicated that she was not threatened to enter into the plea. There is no evidence she was pressured to enter into a plea.

In addition, defendant knew her immigration status may be placed in jeopardy and she decided to proceed with her plea anyway.  Further, she knew

the restitution amount was unknown, at the time of her plea, and decided to proceed anyway.

Moreover, we find no merit in defendant's argument that she failed to provide a sufficient factual basis to support her plea or that counsel should have produced her interview with authority when she entered her plea.

Because we are convinced defendant failed to establish a prima facie claim of deficient performance, defendant was not entitled to an evidentiary hearing and could not sustain her burden under Strickland.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

27                                                                                    A-2800-23